Jodi F. Bouer (JB 2063)
Kimberly Mack Rosenberg (KR 3325)
BOUER LAW LLC
44 Church St.
White Plains, NY  10601
Tel. (917) 797-8033
jbouer@bouerlaw.com
kim@bouerlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| K.B., by and through his parents and guardians, A.B. and S.B., individually, on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>IBM MEDICAL AND DENTAL BENEFITS PLAN FOR REGULAR FULL-TIME AND REGULAR PART-TIME EMPLOYEES, INTERNATIONAL BUSINESS MACHINES ("IBM") CORP., IBM OFFICE OF THE PLAN ADMINISTRATOR, E. FLEMING AND UNIDENTIFIED COMMITTEE MEMBERS, IBM MEDICAL BENEFITS TRUST,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT (CLASS ACTION)**<br><br>**[REDACTED]**<br><br>ECF CASE |

## I.  PARTIES

1. **K.B.**  Plaintiff K.B. is the six-year-old son and dependent of A.B. and S.B. and resides in Travis County, Texas.  At all relevant times, K.B. was a beneficiary, as defined by ERISA § 3(8), 29 U.S.C. § 1002(8), of the IBM Medical and Dental Benefits Plan for Regular Full-Time and Regular Part-Time Employees, and the IBM Special Care for Children Assistance Plan.  K.B.'s coverage was through S.B.'s employment with International Business Machines Corporation ("IBM").

2. ***IBM Medical and Dental Benefits Plan for Regular Full-Time and Regular Part-Time Employees.*** The IBM Medical and Dental Benefits Plan for Regular Full-Time and Regular Part-Time Employees ("Plan") represents that it is an employee welfare benefit plan under the Employment Retirement Security of Act of 1974 ("ERISA"). *See Appendix A*. The Plan provides health benefits for IBM employees and their dependents such as K.B.

3. ***International Business Machines Corporation.*** Defendant International Business Machines, Corp. ("IBM") is the "Plan Sponsor" and is a named fiduciary under ERISA. IBM is located in Armonk, New York.

4. ***IBM Medical Benefits Trust.*** Based on the Plan's most recent Form 5500, and on information and belief, Defendant IBM Medical Benefits Trust provides some or all of the funding for the benefits covered under the Plan.

5. ***IBM Office of the Plan Administrator, E. Fleming and Unidentified Committee Members.*** Defendants IBM Office of the Plan Administrator and the unidentified committee members collectively are the "Plan Administrator" and named fiduciaries under ERISA. The Summary Plan Document provided to Plaintiff K.B.'s parents in 2019 does not identify any specific plan administrator, noting only that the Plan Administrator "consists of three or more executive level employees appointed by action of the IBM Retirement Plans Committee." *See Appendix A*, p. 205. The Plan's denial letters to Plaintiff K.B.'s parents indicated that "E. Fleming" was the "Plan Administrator." *See, e.g., Appendix B.*

## II.   JURISDICTION AND VENUE

6. Jurisdiction of this Court arises pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7. Venue is proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because, *inter alia*, a defendant resides or may be found in this district.

8. In conformity with 29 U.S.C. § 1132(h), Plaintiff has served this Complaint by certified mail on the Secretary of Labor and the Secretary of Treasury.

### III. NATURE OF THE CASE

9. K.B., a child diagnosed with Autism Spectrum Disorder ("ASD"), seeks to end Defendants' standard practice of health coverage discrimination against K.B. and other enrollees with developmental mental health conditions, ASD, who need treatment for those conditions. Defendants have routinely excluded and limited coverage for services to treat developmental mental health conditions such as ASD, including but not limited to: speech, occupational and physical therapy (speech, occupational and physical therapies to treat developmental mental health conditions are collectively referred to as "Neurodevelopmental Therapies" or "NDT"), Applied Behavior Analysis ("ABA") therapy and other services. Early diagnosis and intensive provision of medically necessary ABA and/or NDT services are essential treatments that can dramatically improve the health and life-long well-being of enrollees with mental health conditions such as ASD.

10. Defendants, however, exclude all coverage of medically necessary ABA and NDT services from the Plan for children with mental health conditions that they assert without specificity, are developmental in nature (referred to by Plaintiffs herein as "developmental mental health conditions"). They also deny coverage of psychological services when sought to diagnose or treat such developmental mental health conditions.

11. Instead of providing such coverage "at parity" in the Plan, defendant IBM created a separate and unequal group health plan for dependents of IBM employees under the age of 26 with developmental disabilities, including developmental mental health conditions called the IBM Special Care for Children Assistance Plan ("SCCAP"). The funds for the SCCAP are paid out of the general assets of Defendant IBM.

12. SCCAP provides separate, unequal, and lifetime-limited health benefits for IBM dependents with developmental disabilities, including developmental mental health conditions. Specifically, SCCAP provided health benefits for qualifying ABA, NDT and certain other services for Plaintiff K.B. and other similarly situated enrollees. SCCAP benefits for these services could only be paid after the enrollee demonstrated that coverage within the IBM Plan was denied or

3

exhausted and no other resource existed. *Appendix A*, p. 174. The SCCAP benefits had a combined lifetime limit of $50,000, despite the Affordable Care Act's prohibition of lifetime financial limits. *Id.,* p. 175; *see* 42 U.S.C. § 300gg-11(a)(1).

13. SCCAP also violates federal Medicaid and ERISA law by attempting to limit its benefit to only claims that remain uncovered after public assistance (defined by SCCAP to include Medicaid and school services) is utilized. *See Appendix A*, pp. 174-175; 29 U.S.C. § 1169(b)(2); 42 U.S.C. § 1396b(o); 42 C.F.R. § 433.136(3); *Caremark, Inc. v. Goetz*, 480 F.3d 779, 788 (6th Cir. 2007) ("[A] private insurer cannot shift responsibility to pay medical bills onto the government by contractual fiat").

14. Defendants' coverage scheme discriminates against enrollees with developmental mental health conditions. On October 3, 2008, Congress passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, commonly known as the Federal Mental Health Parity Act. The Federal Parity Act expanded the scope of previous federal legislation on access to mental health coverage and was "designed to end discrimination in the provision of coverage for mental health and substance use disorders, as compared to medical and surgical conditions." *Coalition for Parity v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010). The Federal Parity Act requires that the exclusions and limitations imposed on mental health services are "no more restrictive" than those applied to substantially all medical and surgical benefits. *See* 29 U.S.C. § 1185a(a)(3); 42 U.S.C. § 300gg-5(a)(3); 26 U.S.C. § 9812(a)(3). It also prohibited the application of separate treatment limitations imposed only on mental health conditions. *Id.* The Federal Parity Act took effect as of October 3, 2009.

15. The Federal Mental Health Parity Act applies to "group health plans" such as the Plan at issue here. Under the Parity Act, the Plan must cover outpatient and inpatient services that are medically necessary to treat mental health conditions, if the plans also cover medically necessary outpatient and inpatient services for medical/surgical conditions. It further requires that the Plan ensure that treatment limitations on services to treat mental health conditions are no more restrictive than the predominant treatment limitations imposed on substantially all of the Plan's

medical and surgical services.  29 U.S.C. § 1185a(3)(A)(ii). Moreover, the Parity Act also bars plans from including "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." *See* 29 U.S.C. § 1185a(a)(3)(A)(ii).

16. Defendants do not apply the Federal Mental Health Parity Act requirements to all services that are necessary to treat mental health conditions.  While the Plan purports to cover medical services "deemed necessary in the diagnosis and treatment of injury, illness and/or pregnancy … when rendered by eligible providers" (*see **Appendix A**,* p. 89) and covers inpatient and outpatient treatment for mental health conditions (*see id.,* pp. 120-122), defendants have adopted a uniform policy excluding certain treatment for unidentified "developmental delays or developmental disabilities" from benefits under the Plan. *See id.,* p, 110.  The Plan specifically excludes coverage for ABA services to treat ASD, an illegal special exclusion of coverage that pertains only to a mental health condition. *Id.,* p, 128.  It also excludes NDT services to treat ASD and other developmental mental health conditions, but covers these services for medical conditions. *See id,* pp, 101, 102, 108-110. Psychological evaluation is also excluded when used to diagnose or treat certain developmental mental health conditions while evaluations for medical conditions are generally covered. *Id.,* p, 127.  The only way K.B. and similarly situated class members can obtain coverage for these essential and medically necessary services to treat their mental health conditions is to obtain a denial of coverage under the Plan, and then seek coverage through the SCCAP, a plan separately administered by IBM that imposes a combined lifetime limit on such coverage of $50,000. *Id.,* p, 174.

17. The Plan's exclusion of ABA, NDT, and certain other services to treat developmental mental health conditions, including ASD, violates the Federal Parity Act, 29 U.S.C. § 1185a, and implementing regulations.  These laws regulate the Plan and are incorporated into the Plan as additional "terms" under ERISA.

18. The Plan's exclusions violate the Parity Act in at least two different ways: ***First,*** the Plan's NDT, ABA, and psychological services exclusions violate the Parity Act on its face. All are "separate treatment limitations that are applicable only with respect to mental health or

5

substance use disorder benefits." *See* 29 U.S.C. § 1185a(a)(3)(A)(ii); *A.F. v. Providence Health Plan*, 35 F. Supp. 3d 1298 (D. Or. 2014). **Second,** and as applied, the Exclusions are treatment limitations that are "more restrictive than the predominant treatment limitations applied to all substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii).

19. For example, according to the Plan, ABA services are outpatient mental health services to treat ASD, a mental health condition. ***Appendix A***, pp, 121-122. But for the special ABA exclusion, which excludes ABA to treat ASD, these services would be covered when medically necessary under the Plan's mental health benefit. The Plan's exclusion of all coverage of ABA therapy is a special exclusion that is applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C. § 1185(a)(a)(3)(A)(ii). Moreover, the ABA therapy exclusion is a form of illegal non-quantitative treatment limitation since the blanket exclusion of medically necessary ABA therapy is more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan, which broadly covers medically necessary services to treat medical conditions. Similarly, the Plan's exclusion of NDT and psychological services to treat unidentified "developmental disabilities" or "developmental delays" is a violation of the Federal Parity Act. *See A.F.* 35 F. Supp. 3d at 1315; *D.T. v. NECA/IBEW Family Med. Care Plan*, 2017 U.S. Dist. LEXIS 195186, at *6 (W.D. Wash. Nov. 28, 2017).

20. Defendants cannot defend these treatment limitations on the basis that the Plan excludes all coverage for the conditions of ASD and an unidentified and undefined category of conditions in the Plan called "developmental disabilities." *See* 29 C.F.R. § 2590.712(a)("[A] permanent exclusion of all benefits for a particular condition or disorder, however, is not a treatment limitation").

21. There is no definition of "developmental disabilities" in the plan or SPD, nor is this term a "particular condition or disorder."

22.     Additionally, the limitations are not a "permanent exclusion of all benefits," since the Plan covers services to treat developmental mental health conditions, including ASD. On the face of the Plan, coverage for prescription medications, primary care, well-child visits, pediatric treatment for ASD and other developmental mental health conditions, and anesthesia for dental treatment involving developmental disabilities are covered. *See **Appendix A***, pp. 60, 89, 132, 152.

23.     For example, based on information and belief, Defendants cover the two FDA-approved medications for treating the symptoms of ASD, Risperdal and Abilify, without any limitation based on diagnosis or developmental disability, and even when provided to treat ASD. *See id.,* p, 139 (covering "Federal legend drugs" (drugs that the FDA requires to have a doctor's prescription) when medically necessary). Discovery may reveal other benefits covered when provided to treat ASD and other conditions that the Plan considers to be "developmental disability" conditions.

24.     The Plan's violations of the Parity Act are not ameliorated by the limited coverage provided within the SCCAP. Federal regulators direct employers like IBM to consider the cumulative effect of all of the relevant plans when assessing for compliance with the Federal Mental Health Parity Act. 29 C.F.R. § 2590.712(e)(1); *see* 78 Fed. Reg. 68240, 68243 ("The classifications and sub-classifications are intended to be comprehensive and cover the complete range of medical/surgical benefits and mental health or substance use disorder benefits offered by health plans and issuers"). No benefits may be "categorized as being offered outside of these classifications and therefore not subject to the parity analysis." *Id.*, at 68243. As a result, the SCCAP benefits must be considered along with the Plan benefits, when conducting the required Parity Act analysis.

25.     Since the SCCAP benefits must be considered to be part of the Plan, the SCCAP imposes an improper lifetime financial cap on mental health benefits for developmental mental conditions that is not imposed on substantially all medical/surgical benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

26. Even if the SCCAP benefits are considered to be a separate group health plan, SCCAP does not comply with the requirements of the Affordable Care Act. Specifically, the Affordable Care Act does not permit group health plans to impose lifetime or annual limits on the dollar value of benefits that are "essential health benefits." 29 U.S.C. § 1185d(a)(1); 42 U.S.C. § 300gg-11. Mental health benefits are "essential health benefits." 42 U.S.C. § 18022(b)(1)(E). ASD and other developmental mental health conditions listed in the DSM are "mental health conditions" under the terms of the Plan, the Parity Act and New York State law. *See* 29 U.S.C. § 1185a(e)(4); N.Y. Ins. Law §3221(l)(5)(E)(iv); ***Appendix A***, p. 122. ABA, NDT and other services to treat developmental mental health services are "mental health care services" under the terms of the Plan and the relevant law. *See id.* Imposing a lifetime or annual financial limitation on mental health services in an ACA-regulated group health plan is an additional breach of the Parity Act and defendants' fiduciary duties.

27. The Federal Parity Act and the relevant provisions of the ACA enter into the terms of the Plan and render all non-conforming provisions void. *See Esden v. Bank of Boston,* 229 F.3d 154, 172 (2d Cir. 2000) ("[T]he terms [of the Plan] are circumscribed by statutory requirements and restrictions. The Plan cannot contract around the statute").

28. By failing to comply with the Federal Mental Health Parity Act and the terms of the Plan as modified by the Parity Act, as well as the ACA, the Defendants are systemically and uniformly failing to properly process claims and administer the Plan and the SCCAP. The Plan and SCCAP participants and beneficiaries have not received the benefits they are entitled to under the Plan and SCCAP as modified by federal law. The participants and beneficiaries are misinformed by Defendants with respect to their right to coverage under the Plan, SCCAP and federal law.

29. This lawsuit seeks remedies for Defendants' breach of fiduciary duties under ERISA, arising out of their failure to comply with the terms of the Plan, SCCAP and relevant federal law. It further seeks to recover the benefits that have been wrongfully denied to K.B. and the class he seeks to represent. It also seeks a court order declaring Defendants' exclusions,

8

limitations, policies and practices excluding certain services to treat developmental mental health conditions to be illegal and void. The lawsuit further seeks an injunction to prevent any future or ongoing efforts by Defendants to use and enforce any exclusions, limitations, policies or practices that impermissibly deny, exclude or limit beneficiaries' access to medically necessary NDT, ABA, psychological or other services to treat developmental mental health conditions under the Plan. Finally, it seeks to require Defendants to provide accurate information concerning the legally-required coverage of NDT, ABA, psychological, and other services to treat developmental mental health conditions under the Plan and SCCAP.

## IV. CLASS ALLEGATIONS

30. ***Definition of Class***. K.B. proposes the following class:

All individuals who:

(a) have been or are participants or beneficiaries under the IBM Medical and Dental Benefits Plan for Regular Full-Time and Regular Part-Time Employees in effect during the relevant limitations period; and

(b) have received, or require ABA, NDT or other excluded services to treat developmental mental health conditions.

31. ***Size of Class***. The class of persons who have received, or require NDT, ABA or other excluded services for the treatment of developmental mental health conditions, and who have been or are participants or beneficiaries under the Plan during the relevant statute of limitations period through February 29, 2020, is expected to number in the hundreds and is so large that joinder of all members is impracticable.

32. ***Class Representative K.B.*** Named Plaintiff K.B. was, at all relevant times, an enrollee in the Plan. K.B. was and remains diagnosed with ASD, a condition that is listed in the most recent Diagnostic and Statistical Manual of Mental Disorders ("DSM"). K.B. needed ABA, NDT, and a psychological evaluation to treat his ASD. Defendants denied K.B.'s requests for coverage of ABA, NDT, and the psychological evaluation as excluded under the Plan. Defendants provided some coverage of K.B.'s needed services in the SCCAP but only after his parents paid

for the services up front, submitted claims and obtained denials from the Plan, and then sought reimbursement from the SCCAP. His claims are typical of the claims of the other members of the class, and through his parents, he will fairly and adequately represent the interests of this class.

33. ***Common questions of law and fact***. This action requires a determination of whether Defendants' policies and practices that deny, exclude and/or limit coverage of ABA, NDT, and certain other services to treat developmental mental health services like ASD violates the Federal Mental Health Parity Act and the terms of the Plan as modified by the Federal Mental Health Parity Act and the Affordable Care Act. Adjudication of this issue will in turn determine whether Defendants are liable under ERISA for their conduct.

34. ***Separate suits would create risk of varying conduct requirements***. The prosecution of separate actions by class members against Defendants would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

35. ***Defendants have acted on grounds generally applicable to the class.*** By applying policies and practices that result in the exclusion of coverage of ABA, NDT, and certain other services to treat developmental mental health conditions, Defendants have acted on grounds generally applicable to the class, rendering declaratory relief appropriate respecting the entire class. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

36. ***Questions of law and fact common to the class predominate over individual issues.*** The claims of the individual class members are more efficiently adjudicated on a class-wide basis. Any interest that individual members of the classes may have in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class action mechanism. Upon information and belief, there is no pending class action suit filed against the Defendants for the same relief requested in this action. Issues as to Defendants' conduct in applying standard policies and practices towards all members of the class predominate over

questions, if any, unique to members of the class. Certification is therefore additionally proper under Federal Rule of Civil Procedure 23(b)(3).

37. **_Venue._** This action can be most efficiently prosecuted as a class action in the Southern District of New York, where Defendants do business and are located.

38. **_Class Counsel_.** K.B. has retained experienced and competent class counsel.

## V. FACTUAL BACKGROUND

39. At all relevant times, K.B. and members of the class have been participants or beneficiaries of the Plan, which is subject to ERISA pursuant to 29 U.S.C. § 1003. K.B. was a plan enrollee since his birth through February 29, 2020, when his father left employment with Defendant IBM.

40. At all relevant times, K.B. and other members of the class have been diagnosed with certain developmental mental health conditions, including ASD, that the Plan considers to be "developmental disabilities."

41. At all relevant times, Plaintiff K.B. and other members of the class have required ABA, NDT, psychological, or other services to treat their developmental mental health conditions, including ASD. As defined by the Plan and under state and federal law, these services are "mental health services" since they treat a condition listed in the latest version of the DSM.

42. Despite the broad coverage for "mental health services" in the Plan, the ABA, NDT, psychological, and other services needed by K.B. and other members of the class to treat their developmental mental health conditions, including ASD, were denied and excluded pursuant to the Plan's ABA Exclusion and "therapy to treat a developmental delay or developmental disability" exclusion. (hereinafter the "Developmental Disability Exclusion"). This was a standard practice and policy implemented by Defendants.

43. In April-May 2018, both K.B.'s day care provider and pediatrician both recommended to K.B.'s parents that K.B. receive a speech therapy evaluation.

44. K.B. was evaluated by Erin Silvert-Noftle, MA, CCC-SLP, of KidVentures Therapy Services, who recommended that K.B. receive speech therapy.

45. Shortly thereafter, K.B. was enrolled in speech therapy, provided by Ms. Silvert-Noftle.

46. KidVentures Therapy Services requested a predetermination letter from the Plan for K.B.'s speech therapy. See *Appendix C.*

47. The Plan provided a letter of predetermination that the proposed speech therapy services were not covered by the Plan. See *Appendix D.*

48. K.B.'s parents did not appeal the denial of speech therapy coverage because they understood that the appeal would be futile and that some of the cost of the speech therapy might be covered by the SCCAP.

49. The SCCAP reimbursed 80% of K.B.'s speech therapy services, but only after K.B.'s parents obtained the predetermination letter from the Plan, paid for the services, applied and demonstrated that K.B. qualified for the SCCAP, and submitted to the SCCAP for reimbursement of K.B.'s speech therapy.

50. K.B. also received a recommendation that he be evaluated for occupational therapy services. He was evaluated by Megan Chadwick, M.S., OTR of KidVentures Therapy Services. See *Appendix E.* Ms. Chadwick recommended that K.B. receive occupational therapy services. *Id.*

51. K.B. started receiving occupational therapy services from KidVentures Therapy, and his claims were denied by the Plan. See *Appendix F.*

52. K.B.'s parents did not appeal the denial of occupational therapy services in the Plan because they understood that the appeal would be futile and that some of the cost of the occupational therapy services might be covered by the SCCAP.

53. SCCAP does not reimburse providers directly, unlike the Plan. Instead, SCCAP requires participants and beneficiaries to pay the full amount of the service to the provider and then, after meeting another deductible, seek 80% reimbursement from SCCAP. As a result,

participants and beneficiaries with developmental disability conditions must go through multiple, complex administrative procedures, and have sufficient excess funds to float the required up-front payments, in order to receive reimbursement.

54. Plaintiff K.B. was diagnosed with ASD by Meredith I. Brinster, Ph.D. on or about May 17, 2019.  **Appendix G.**

55. Dr. Brinster recommended that K.B. receive ABA therapy to treat his ASD.  *Id.*

56. Based on the assessment and recommendation of Dr. Brinster and that of Amanda Little, Ph.D., BCBA-D, LBA, K.B.'s parents enrolled him in treatment with Little Behavior Consulting, LLC ("LBT"), where he received ABA services to treat his ASD from Dr. Little and trained staff working under her supervision.

57. Dr. Little is a licensed provider of ABA therapy and LBT accepts insurance coverage through Aetna, Cigna, Blue Cross Blue Shield, Optum and Beacon Health Options.  *See* https://littlebehaviorconsultingonthecoast.com/ (last visited 1/22/21)*.*

58. Prior to enrolling with LBT, K.B.'s mother called the Plan to request coverage of ABA therapy for K.B.  His mother was told that the Plan excludes all coverage of ABA therapy, but no written denial was provided.

59. K.B.'s mother and LBT submitted claims to the Plan seeking coverage of the ABA therapy provided to K.B.  Every claim was denied on the same basis:  "Your plan excludes this service.  Refer to your plan details for a list of exclusions."  *See, e.g.,* **Appendix H.**

60. On February 25, 2020 K.B.'s parents appealed the denials of K.B.'s ABA therapy services by the Plan. **Appendix I** (without attachments).  The February 25 appeal argued at length that the Plan's exclusion of ABA therapy to treat ASD violated the Federal Mental Health Parity Act.  *See id.*

61. On April 1, 2020, Aetna, on behalf of the Plan denied the appeal, identifying the exclusion in the Plan for "Intensive Behavior Therapy for Autism Spectrum Disorder" as the basis of the denial.  *See* **Appendix J**.  Aetna did not respond to K.B.'s parents' legal arguments regarding the impact of the Federal Mental Health Parity Act on the Plan's ABA exclusion at all.

62. On May 31, 2020 K.B.'s parents appealed the denials of K.B.'s ABA therapy services by the Plan again. ***Appendix K*** (without attachments). Once again, the appeal explained that the Plan's exclusion of ABA therapy to treat ASD violated the Parity Act. *Id.*

63. Neither Aetna nor the Plan timely responded to the appeal.

64. Long after the deadline for the Plan's response, on November 24, 2020, the Plan Administrator, identified as "E. Fleming," denied K.B.'s parents' second appeal. ***Appendix L.*** In the belated denial, Defendant Fleming asserted, **without any explanation**, that the Plan's ABA exclusion complied with the federal law: "Please note, the IBM plan exclusion for ABA therapy does not violate federal law, and the $50,000 benefit maximum for SCCAP was determined to be reasonable." *Id.,* p. 2.

65. But for the Plan's application of the ABA exclusion, K.B.'s ABA therapy would have been covered as medically necessary mental health treatment. Specifically, as described in the Plan, benefits are available for all services that are necessary for the diagnosis and/or treatment of a mental health condition listed in the latest version of the DSM, including autism spectrum disorder. K.B.'s ABA services met all of these requirements.

66. The sole basis for Defendants' denial of K.B.'s request for coverage of ABA therapy and the appeals submitted on his behalf was the Plan's exclusion of ABA therapy. The application of this uniform Plan exclusion and limitation is not "at parity" with the Plan's coverage of medical/surgical services. As a result, K.B. and other members of the class have paid for ABA services out of their own pockets or face the imminent threat that they will have to do so in the near future.

67. K.B. and other members of the class have been forced to go through extensive procedures to obtain additional coverage from the SCCAP that are not imposed on participants and beneficiaries when they seek medical/surgical coverage. Other class members who are unable to front the funds to obtain reimbursement from the SCCAP, or who have exceeded the SCCAP lifetime limit, have been forced to forgo needed treatment due to Defendants' conduct.

68. In light of the established Plan documents, statements and written representations by Defendants to the parents and providers of K.B. and other members of the class, any attempt by class members to pursue administrative remedies is futile.

69. Since Plaintiff K.B. challenges defendants' compliance with the Federal Parity Act and ACA requirements, exhaustion of administrative remedies is not required. *See McCulloch v. Bd. of Trs. of The Seiu Affiliates Officers & Emples. Pension Plan*, 2016 U.S. Dist. LEXIS 195182, at *14 (S.D.N.Y. Mar. 31, 2016) (Exhaustion is not required for challenges asserting a plan member's statutory rights under ERISA).

70. Nonetheless, K.B. has completed the internal appeal process within the Plan to no avail. He has exhausted any administrative remedies that may be required. *See **Appendix L***.

71. K.B.'s parents requested a complete copy of all documents relied upon by Defendants related to the Plan's denial of coverage for ABA therapy services. They also requested the legally-mandated disclosure of the "the processes, strategies, evidentiary standards, and other factors" used to determine whether the ABA exclusion complied with the requirements of the Federal Parity Act. *See* 29 U.S.C. 1185a(a)(4); 29 C.F.R. §2590.712(d)(3). *See **Appendix M**.*

72. The request was mailed on January 14, 2021. *See **Appendix N***. The letter was received by a representative of the IBM Plan Administrator. *See **Appendix O***.

73. By letter dated February 2, 2021, a representative of the IBM Benefits Center acknowledged receipt of the letter, but misidentified the request as an "appeal" that required "investigation." IBM represented it would provide a written response from the Plan Administrator within 30 days. *See **Appendix P***. This response is inadequate as a matter of ERISA law.

74. To date, no substantive response has been provided by the Plan.

75. On February 17, 2021, K.B.'s parents submitted another request for the claims documents, the IBM plan, and the non-quantitative treatment analysis required under the recently amended 29 U.S.C. § 1186a(a)(8). *See **Appendix Q***. This second request was submitted after February 10, 2021, the effective date of the amendment to the Parity Act, 29 U.S.C. § 1185a(a)(8).

76. No response to the second request has been received as of the date of this filing.

15

77.     Any additional information necessary to sufficiently articulate a claim under the Federal Mental Health Parity Act remains in the sole possession of Defendants and is not available to Plaintiffs, despite their best efforts. *See Jander v. Ret. Plans Comm. of IBM*, 910 F.3d 620, 631 (2d Cir. 2018) (ERISA plaintiffs are only required to plead the specific information within their possession); *Bushell v. UnitedHealth Grp., Inc.*, 2018 U.S. Dist. LEXIS 51577, at *18 (S.D.N.Y. Mar. 27, 2018) ("[I]t is enough to plausibly plead that there is a categorical exclusion for mental health benefits but not for medical benefits").

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM:
### CLAIM FOR RECOVERY OF BENEFITS, CLARIFICATION OF RIGHTS UNDER TERMS OF THE PLANS
### ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

78.     K.B. re-alleges all the paragraphs above.

79.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

80.     K.B. and the class are entitled to recover benefits due them under the terms of the Plan.  They are also entitled to a declaration of their rights to coverage of ABA, NDT and other services to treat developmental mental health conditions in the Plan and SCCAP.

### SECOND CLAIM:
### BREACH OF FIDUCIARY DUTIES AND OTHER EQUITABLE RELIEF
### ERISA §§ 404(a)(1), 502(a)(3); 29 U.S.C. §§ 1104(a), 1132 (a)(3)

81.     Defendant IBM is a plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it is the Plan Sponsor.  Defendant IBM Office of the Plan Administrator, E. Fleming, and the Unidentified Committee Members are plan fiduciaries because they are the "Plan Administrator."  Defendants IBM, the IBM Office of the Plan Administrator, E. Fleming, and the Unidentified Committee Members exercises discretionary authority or discretionary control with respect to the denial and appeal of denied claims under the Plan.

82. ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), states, in relevant part, that a plan fiduciary must discharge its duties with respect to a plan "solely in the interest of the participants and beneficiaries and … in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV."

83. The terms of an ERISA plan include provisions of substantive federal law, such as the requirements in the Federal Parity Act and the Affordable Care Act. Defendants have failed to comply with the terms of the Plan as modified by the requirements of the Federal Mental Health Parity Act, the Affordable Care Act, and their implementing regulations.

84. Defendants violated their obligations under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by failing to act in accordance with the documents and instruments governing the Plan, including the relevant federal laws, and breached their fiduciary duties to K.B. and all class members.

85. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." K.B. and the class seek to enjoin Defendants from continuing to apply exclusions and limitations on all coverage of NDT, ABA, and other services to treat developmental mental health conditions. K.B. and the class also seek to have Defendants provide the class with corrective notice, reformation of the relevant Plan documents and processing or reprocessing of all claims for NDT, ABA and other services to treat developmental mental health conditions incurred by class members during the class period.

86. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce plan terms. To the extent full relief is not available under ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(B), then K.B. and the class seek equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution, and surcharge arising out of defendants' failure to

administer the terms of the Plan as modified by the Federal Parity Act and its implementing regulations.

### THIRD CLAIM:
### VIOLATION OF ERISA AND MENTAL HEALTH PARITY DISCLOSURE REQUIREMENTS
### ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A)

87. Plaintiff realleges all of the paragraphs above.

88. Plaintiff seeks sanctions for up to $110 per day for defendants' failure to produce or ensure the production of the "medical necessity criteria for both medical/surgical benefits and mental health and substance use disorder benefits, as well as the processes, strategies, evidentiary standards and other factors used to apply" the Exclusions. *See* 29 U.S.C. § 1185a(a)(4), (8)(A)(i)-(v); 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2590.712(d)(3); 29 C.F.R. § 2520.104b-1; 29 C.F.R. § 2575.502c-1; **Appendix P.**

89. If defendants **never** conducted the required analysis to compare the "processes, strategies, evidentiary standards and other factors used to apply" the ABA and Developmental Disability Exclusions to those used for substantially all outpatient medical/surgical services, Plaintiff seeks sanctions in the form of benefits for K.B. and other members of the class. *See e.g., Bard v. Bos. Shipping Ass'n*, 471 F.3d 229, 245 (1st Cir. 2006) (Courts may sanction a significantly non-compliant plan by awarding the disputed benefits pursuant to 29 U.S.C. § 1132(a)(3)).

### VII. DEMAND FOR RELIEF

WHEREFORE, K.B. requests that this Court:

1. Certify this case as a class action; designate named Plaintiff K.B., by and through his parents A.B. and S.B., as class representative, and designate BOUER LAW, LLC, Jodi F. Bouer and Kimberly Mack Rosenberg, and SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC, Eleanor Hamburger, as class counsel;

2. Declare that Defendants may not apply contract provisions, policies or practices that wholly exclude or impermissibly limit ABA, NDT or other services to treat developmental

18

mental health conditions when medically necessary, since such exclusions and/or limitations are not predominantly applied to medical and surgical services in the Plan;

3. Reform the terms of the Plan and SCCAP pursuant to 29 U.S.C. § 1132(a)(3) to meet the legal requirements of the Federal Mental Health Parity Act and the Affordable Care Act, and order corrective notice to class members regarding the reformation of the plan.

4. Enter judgment in favor of K.B. and the class and order either damages in an amount to be proven at trial due to the failure to provide benefits due under the Plan as modified by the Federal Parity Act, the Affordable Care Act and their implementing regulations, or processing and reprocessing of claims under the terms of the reformed plan;

5. Award K.B. and the class their attorneys' fees and costs under ERISA § 502(g), 29 U.S.C. § 1132(g); and

6. Award such other relief as is just and proper.

RESPECTFULLY SUBMITTED: February 26, 2021.

BOUER LAW LLC

*s/ Jodi F. Bouer*
Jodi F. Bouer (JB 2063)
Email: jbouer@bouerlaw.com

*s/ Kimberly Mack Rosenberg*
Kimberly Mack Rosenberg (KR 3325)
Email: kim@bouerlaw.com
44 Church St.
White Plains, NY 10601
Tel. (917) 797-8033

and

55 Phillips Ave.
Lawrenceville, NJ 08648
Tel. (609) 924-3990

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
   *s/ Eleanor Hamburger*
Eleanor Hamburger (*Pro Hac Vice Pending*)
Email: ehamburger@sylaw.com
3101 Western Ave., Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
Direct (206) 838-1809

**Attorneys for Plaintiff**